UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SANDI WILSON and SYNTHIA LISI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VENTURE FINANCIAL GROUP, INC., et al.,<br><br>Defendants. | CASE NO. C09-5768BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' ERISA (Employee Retirement Income Security Act) action (Dkt. 28). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part Defendants' motion to dismiss as discussed herein.

**I. PROCEDURAL BACKGROUND**

On December 16, 2009, Plaintiffs filed their complaint. Dkt. 1. On March 15, 2010, Defendants filed the instant motion to dismiss. Dkt. 28.

**II. FACTUAL BACKGROUND**

Plaintiffs filed this putative class action against Defendants alleging violations of ERISA. Dkt. 1 (the "Complaint"). The proposed class consists of all the similarly situated participants in the retirement plans at issue, as discussed below. Plaintiffs were employees

ORDER - 1

of Venture Bank (the "Bank"), a subsidiary of Venture Financial Group, Inc. ("VFGI"), which operated 18 financial centers in western Washington. *Id.* ¶ 23.

On September 11, 2009, state banking regulators closed the Bank. *Id.* ¶ 115. The Bank was taken into receivership by the FDIC and sold through a Purchase and Assumption Agreement to First-Citizens Bank & Trust of Raliegh, North Carolina. *Id.* ¶¶ 116-117. The Bank's closure apparently occurred as a result of its "real-estate lending and large losses on investments in Fannie Mae and Freddie Mac preferred stock and in complex debt securities." *Id.* ¶ 115 (citation omitted).

Prior to its closure and since at least 1980, the Bank offered its employees the opportunity to acquire stock ownership interests in the Bank. Complaint ¶¶ 32 (citing KSOP § 1), 56 (citing ESOP § 1.2).[1] The Bank's stock was never publicly traded. *See, e.g.,* Complaint ¶ 41. Stock ownership was acquired through the KSOP and ESOP offered by the Bank. Plaintiffs allege that those responsible for the plans breached fiduciary duties that they owed to the participants of two retirement plans. *See generally* Complaint.

**A.   The Plans**

The KSOP was structured as an ESOP (Employee Stock Option Plan) with 401(k) provisions. Complaint ¶ 28. Effective January 1, 2006, the Bank adopted the KSOP as a complete amendment and restatement of the plan initially effective January 1, 1980. *Id.* ¶ 30. "The [Bank's] Stock portion of the KSOP was designed to be an ESOP under Section 4975(e)(7) of the Tax Code." *Id.* ¶ 30. The KSOP received its funding from employee and employer contributions and the earnings from investments made using the contributed funds. *Id.* ¶ 31.

---

[1] Absent a material difference requiring separate identification, the Court's references to the KSOP and ESOP pertain to the 2006 plans as opposed to the 2009 plans. The 2006 plans were in effect when the "Class Period" began, and the parties do not suggest any material difference exists between the 2006 and 2009 plans that requires further distinction.

ORDER - 2

The ESOP was a spin-off of the KSOP, which took effect January 1, 2006. *Id*. ¶ 55. In short, "[the Bank] . . . created a stand-alone ESOP within the meaning of the Internal Revenue Code Section 4975(e)(7) and ERISA § 407(d)(6), comprised of Employer Match and other Employer Discretionary Contributions." Complaint ¶ 55. "The ESOP was intended to qualify as 'a stock bonus employee stock ownership plan' . . . ." *Id*. at 56. Participants were not permitted to contribute to the ESOP. *Id*. ¶ 60 (citing ESOP § 4.2).

Both the KSOP and the ESOP were "employee benefit plans," as defined by § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A). *See* Complaint ¶¶ 27, 54. Bank stock was the primary investment vehicle for the funds being contributed to the KSOP and ESOP, which the respective plans required. *Id*. ¶ 62; *see also* KSOP § 1. Plaintiffs contend, however, that the trustee had the ability to invest in non-stock assets to the extent prudent for the Trust. *Id*. ¶¶ 52 (citing KSOP Plan § 5.1), 62 (citing ESOP § 14.1).

### 1. Disbursement of Assets Under the KSOP

The KSOP expressly limited the ways in which a participant could obtain a distribution of their investment. First, a participant under the age of 59½ could, subject to applicable rules, obtain a "Hardship Distribution." KSOP § 17.1. Second, an employed participant could, subject to applicable plan rules, obtain a "distribution of all or any portion of his vested Account upon attainment of age fifty-nine and one-half (59½) . . . [,]" referred to as an "in-service" distribution. KSOP § 17.2. Finally, the KSOP required distributions in instances where the participant "attains age 70½ or has terminated service, regardless of any consent requirements." KSOP § 14.2. These appear to be the only authorized methods of distribution under the KSOP.

"Shares of [Bank] Stock distributed by the Trust [were] subject to a 'right of first refusal' if the Bank Stock is not publicly traded" at the time of disbursement. KSOP

§ 16.1. Further, in the absence of public trading, the Bank is required to "issue a 'put option' to any participant who receives a distribution of Bank Stock." KSOP § 16.2.

### 2. Disbursement of Assets Under the ESOP

The ESOP provided for the same distribution opportunities and options ("put" and "right of first refusal"), except it did not provide for an in-service distribution. *See generally* ESOP § 10.

### B. The Fiduciaries

The KSOP identified the trustees and Administrative Committee as "Named Fiduciaries." *Id.* ¶ 46. The trustees and the Administrative Committee were appointed by the Board of Directors and served at its pleasure. *Id.* ¶ 47. The Administrative Committee was designated as the Plan Administrator and had the duty of disclosure pursuant to ERISA. *Id.* ¶¶ 48, 49 (citing KSOP § 19.2). The trustees had the responsibility of managing and investing the trust assets. *Id.* ¶ 50 (citing KSOP § 19.1).

The ESOP identified the Administrative Committee and the trustees as named fiduciaries of the plan and vested them with authority to control and manage the operation and administration of the plan. *Id.* ¶¶ 71, 73 (citing ESOP § 12.5(A); 12.5(B)). The Board of Directors were authorized to appoint and remove members of the Administrative Committee and the trustees. *Id.* ¶ 72 (citing ESOP § 12.5(A)). The ESOP also identified the Bank as a named fiduciary to the extent it exercised authority and responsibility to name, appoint, reappoint, or remove any trustee or any member of the Administrative Committee. ESOP § 12.01.

As the complaint notes, these directors, administrators, and trustees held dual roles with the company. *See e.g.*, Complaint § B. The Complaint identifies three categories of Defendants: (1) the director Defendants, derived from the Board of Directors; (2) the Administrative Committee Defendants, those named as plan administrators by the Board of Directors; and (3) the trustee Defendants, those named by the Board of Directors to

ORDER - 4

serve as the plans' trustees. As alleged in the Complaint, some of the people in these categories served in more than one category and also held corporate positions with the Bank. *See, e.g., id.* ¶¶ 24-26 (setting out categories of defendants and identifying some of the named Defendants' dual roles with the plans and the Bank or VFGI). For example, the Complaint names Ms. Sandra Sager as being an Administrative Committee Defendant, trustee Defendant, and the Bank's Executive Vice President and Chief Financial Officer. *See* ¶¶ 25(2), 26(2).

## C.     The Allegations

Plaintiffs assert the relevant class period for this matter falls between January 1, 2008 and September 11, 2009 (the "Class Period"). Plaintiffs allege four counts[2] against Defendants: (1) "the Defendants who were responsible for the investment of the Plans' assets breached their fiduciary duties to the Plans' Participants in violation of ERISA by failing to prudently and loyally manage the Plans' investment in [the Bank's] Stock"; (2) "Defendants, who were responsible for selection monitoring and removal of the Plans' other fiduciaries, failed to properly monitor the performance of their fiduciary appointees and remove and replace those whose performance was inadequate"; (3) "certain Defendants breached their duty to inform the Plans' Participants by failing to provide complete and accurate information regarding the soundness of [the Bank's] Stock and the prudence of investing and holding retirement contributions in the equity of the [Bank]"; and (4) the "fiduciary Defendants breached their duties and responsibilities as co-fiduciaries by failing to prevent breaches by other fiduciaries of their duties of prudent and loyal management, complete and accurate communications, and adequate monitoring." *Id*. ¶¶ 13, 169.

---

[2]Originally, Plaintiffs alleged five counts, but they withdrew the fifth count in their response in opposition to the instant motion. *See* Dkt. 34 n. 3.

ORDER - 5

Plaintiffs allege that the "KSOP and ESOP incurred substantial losses as a result of their heavy investment in [the Bank's] Stock." *Id*. ¶ 77. Plaintiffs support this claim by first pointing to the drop in stock price from $18 per share at the end of 2007 to the $0.25 per share value at the end of 2008. *Id*. ¶ 78. Plaintiffs allege that the total loss to the participants as a result of the alleged fiduciary breaches is estimated at around $12 million. *Id*. ¶ 79.

Plaintiffs further allege that the FDIC's investigation of the Bank revealed "a plethora of 'unsafe and unsound banking practices'" relating to the management of the Bank. *Id*. Plaintiff contends that "because of their positions with Company and/or the Bank, Defendants were well-aware of these unsafe and unsound banking practices." *Id.* ¶ 84. It appears to be the Plaintiffs' position that the FDIC informed the Bank of information that should have informed, or did inform, the Defendants that the Bank's stock was no longer a prudent investment for the KSOP and ESOP "by January 1, 2008 at the very latest." *Id*. ¶ 86.

Plantiffs claim they are entitled to "recover losses to the Plans for which the fiduciary Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, and 1132(a)(2)." *Id*. ¶ 15. Plaintiffs also seek other equitable remedies, as available. *Id*.

### III. DISCUSSION

**A.    Procedural**

**1.    Motion to Dismiss Standard**

Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

### 2. Pleading Under ERISA

The prevailing view is that, as a general rule, a plaintiff need not meet some heightened pleading requirement when bringing an ERISA claim. *See, e.g., In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 867 (S.D. Tex. 2004) (no heightened pleading requirement under ERISA); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp. 2d 511, 652 (S.D. Tex. 2003) (same). Rather, Plaintiffs need only meet the pleading threshold of Rule 8(a), which requires "a short and plain statement of the claim showing that [they are] entitled to relief." Fed. R. Civ. P. 8(a).

## B. ERISA's Scope and Purpose With Respect to an ESOP

Congress enacted ERISA in 1974 in order to "assur[e] the equitable character of [employee benefit plans] and their financial soundness." *Cent. States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985). In enacting ERISA, Congress established minimum standards of fiduciary conduct for trustees, administrators and others dealing with retirement plans. ERISA defines a fiduciary as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii)

ORDER - 7

>he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

An employer may sometimes act in a non-fiduciary capacity and is only subject to claims for breach of fiduciary duties when acting in a fiduciary capacity. Therefore, the threshold question for any claim of breach of fiduciary duty is "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211 (2000). The fiduciary function is not an "all-or-nothing concept" and a defendant is only a fiduciary to the extent that he exercises discretionary authority "with respect to the particular activity at issue." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005). "A person or entity becomes an ERISA fiduciary either [1] by being named as a fiduciary in written instruments that govern how an employee benefit plan is established or maintained, or [2] by exercising discretionary authority or control over the management, administration, or assets of a plan." *In re Dynergy, Inc. ERISA Litig.*, 309 F. Supp. 2d at 872.

ERISA holds fiduciaries to a prudent man standard of care, which entails: (1) acting solely in the interest of the participants and beneficiaries, (2) "with the care, skill, prudence, and diligence . . . that a prudent man . . . would use . . . ," (3) "by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so," and (4) acting in accordance with the documents and instruments governing the plan unless doing so would violate other provisions of ERISA. 29 U.S.C. § 1104(a)(1).

ERISA also contains specific provisions for eligible individual account plans ("EIAPs") such as the plan at issue here. An EIAP is an individual account plan which is a profit sharing, stock bonus, thrift or savings plan, or an ESOP, which "explicitly provides for acquisition and holding of qualifying employer securities" (such as company

ORDER - 8

stock). *See* 29 U.S.C. § 1107(d)(3)(A)-(B). In regards to EIAPs, a fiduciary does not violate "the diversification requirement . . . and the prudence requirement (only to the extent that it requires diversification)" by acquiring or holding "qualifying employer securities." 29 U.S.C. § 1104(a) (2).

An ESOP is non-diversified by definition because "the very purpose of an ESOP is to invest in a single stock, that of the employer of the ESOP's participants." *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 410 (7th Cir. 2006). "A directed trustee appointed under an ERISA plan does not have [the duty to diversify the trust assets] because the very purpose of an ESOP is to invest in a single stock, that of the employer of the ESOP's participants." *Id.* at 406. Further, "unlike traditional pension plans governed by ERISA, EIAPs – and ESOPs in particular – are not intended to guarantee retirement benefits and indeed by their very nature, 'place [] employee retirement assets at much greater risk than does the typical diversified ERISA plan.'" *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004) (citing Martin v. Feilen, 965 F.2d 660, 684 (8th Cir. 1992)).

**C.     Count I - Failure to Prudently and Loyally Manage the Plan**

Plaintiffs allege that, during "the Class Period, [the Bank's] stock was an imprudent investment for the Plan Participants' retirement savings." *Id*. ¶ 80. As a basis for this allegation, Plaintiffs rely primarily on an investigation of the Bank by the FDIC and the State of Washington, which began September 22, 2008. *See, e.g., id*. ¶ 83.

Specifically, Plaintiffs allege two core complaints: (1) "Knowing of this extraordinary risk, . . . Defendants had a duty to avoid permitting the Plans or any [P]articipant from investing the Plan's assets in Company Stock"; and (2) "Further, knowing that the Plans were not diversified portfolios, but were overwhelmingly invested in Company Stock, the . . . Defendants had a heightened responsibility to divest the Plans of Company Stock if it became or remained imprudent." *Id*. ¶ 189. Essentially, the

ORDER - 9

Plaintiffs argue it was imprudent for Defendants not to (1) divest the plans and (2) to continue to hold and offer company stock in the plans.

### 1. The *Monech* Presumption

As an initial matter, the parties dispute whether the so called "*Monech* presumption" applies in this circuit. *See Monech v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995). In *Monech*, the court determined that "fiduciaries of ESOPs are presumed to have acted consistently with ERISA in their decisions to invest assets in employer stock." *Syncor*, 516 F.3d 1095. However, the Ninth Circuit has twice declined to adopt the *Monech* presumption. *See id*; *Wright*, 360 F.3d at 1098, n.3. This Court also declines to follow the *Monech* presumption. To the extent the cases cited herein have applied the *Monech* presumption, the Court departs from those cases on this issue.

### 2. Divestiture

In support of their motion to dismiss, Defendants argue that divestiture was impossible. *See* Dkt. 28 at 19. Defendants base this claim primarily on the fact that the stock was not publically traded. *Id*. (relying on *In re Lehman Brothers Sec. & Erisa Litig.*, 08 Civ. 5598, 2010 WL 354937, at *21, n 65 (S.D.N.Y. Feb. 2, 2010). However, the Court concludes that Defendants overstate the reach of the *Lehman Bros.* case. First, the case is not binding authority in this Court. Second, the case concerns a publicly traded company, and the Bank in this case was not. Finally, the case is not bindinge simply that one cannot be held liable for failure to divest stock on a day that the stock market is closed.

Nonetheless, the Court does find persuasive the more basic issue: The Bank's stock is not publically traded, which creates the absence of any market in which to readily sell the stock. This fact left the Bank with the means provided in the plans for disbursement of the trust assets. As discussed above, disbursement of trust assets can occur in a limited number of circumstances. Plaintiffs have not alleged facts sufficient to

ORDER - 10

establish that Defendants could have divested the stock held by the plans if they wanted to.

Additionally, the claim for divestiture as pleaded appears to the Court to be nothing more than a claim for diversification, which a fiduciary generally cannot be held liable for under ERISA. 29 U.S.C. § 1104(a)(2); *see also Mellot v. ChoicePoint, Inc.*, 561 F. Supp. 2d 1305 (N.D. Ga. 2007); *Pedrazza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262 (N.D. Ga. 2006); *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310 (N.D. Ga. 2006).

Plaintiffs assert that the prudence claim they allege is not based upon diversification and therefore is not excluded by 29 U.S.C. § 1104(a)(2). *See, e.g.,* Dkt. 34 at 14. However, Plaintiffs' Complaint alleges that Defendants had a "heightened responsibility to divest the Plans" because they were "overwhelmingly invested in Company Stock." Complaint ¶ 189. While an ERISA fiduciary's duty of prudence extends beyond diversifying the investments of a plan, a plaintiff's claimed breach of this duty does not. In *Smith*, the plaintiff alleged that defendants acted imprudently by "maintaining the Plan's pre-existing heavy investment in Delta securities when the stock no longer was a prudent investment for the Plan." 422 F. Supp. 2d at 1326. The *Smith* court described the plaintiff's pleading in that case as an attempt "to argue around ERISA's diversification exemption by alleging that the [plan's] heavy investment in Delta securities was imprudent irrespective of the lack of diversification." *Id.* at 1327. The *Smith* court concluded that:

> At its core, however, Count I just amounts to another form of diversification argument. Section 1104(a)(2) speaks to such an argument, exempting not only the duty to diversify but also the duty of prudence to the extent it requires diversification. Therefore, regardless of Plaintiff's phraseology, a strict application of § 1104(a)(2) mandates dismissal of Count I . . . .

*Id*. The Court concludes that the same is true for Plaintiffs' prudence allegations regarding divestiture in this case.

ORDER - 11

In some circumstances, however, courts have suggested that § 1104(a)(2) may not bar a claim of breach based on failing to divest. *See, e.g., Armstrong v. LaSalle Bank Nat. Ass'n*, 446 F.3d 728, 732 (7th Cir. 2006).[3] An ESOP trustee's duty of prudence demands an even more watchful eye, diversification not being available to buffer the risk to the beneficiaries should the company encounter adversity. There is a sense in which, because of risk aversion, an ESOP is imprudent per se, though legally authorized. This built-in "imprudence" (for which the trustee is of course not culpable) requires him to be especially careful to do nothing to increase the risk faced by the participants. *Armstrong*, 446 F.3d at 732. Even though the trustee of an ESOP does not have a general duty to diversify, such a duty can arise in "special circumstances." *Id.*

In another case a court posited the following hypothetical, which sets up "special circumstances" where a duty to diversify may arise with respect to an ESOP:

> Suppose that all or most of the plan participants were just 18 months short of retirement . . ., the ESOP was their principal retirement asset (we don't know whether it was or not) and was entirely invested in the stock of their employer . . ., and their employer was bought in a stock-for-stock deal-so that all the assets of the ESOP became stock in the acquirer-by a company that had a much higher debt-equity ratio than their (former) employer and as a result its stock price was much more volatile and its bankruptcy risk greater. Then, even if the trustees did not predict the company's "impending collapse[,]" they might be required in the interest of the participants . . . to diversify the plan's stockholdings . . . . But the plaintiffs did not attempt to show that this is such a case.

*Steinman v. Hicks*, 352 F.3d 1101, 1106 (7th Cir. 2003); *see also Armstrong*, 446 F.3d at 732 (citing *Steinman* positively on the issue of "special circumstances") (Posner, J.). In *Armstrong*, Judge Posner contemplated whether prudence requires diversification in the face of the risk that the employees would make a "run" on the stock by terminating their

---

[3]*Armstrong* is notable for the reasons discussed herein but also because the matter concerned a closely held company like the Bank in this case. As such, it suggests that a defendant's "lack of market" claim is not an absolute bar to a claim for breach based on failing to divest a non-publicly traded stock. *See* 446 F.3d 728.

ORDER - 12

employment and obtaining a distribution, but noting such facts were not before the court. 446 F.3d at 732.

The Seventh Circuit also noted that a point may exist at which "the ESOP trustee should [have sold] in order to protect the employee-shareholder against excessive risk." *Harzewski v. Guidant Corp.*, 489 F.3d 799, 807 (7th Cir. 2007). However, "[e]xcessive" risk cannot be judged in isolation, but must be compared to the amount and character of the participants' other assets. It makes no sense to argue that the risk was "excessive" without knowing the amount and character of the participants' other assets. "[W]hat is important is the diversification of the employee's entire asset portfolio . . . rather than whether an individual asset is diversified." *Summers*, 453 F.3d at 411.

In any event, Plaintiffs have not pleaded such "special circumstances," and the Court can conclude only that they have failed to state a claim for which relief can be granted with respect to their divestiture claim. This conclusion reaches Plaintiffs' loyalty claim as well because that argument is indistinguishable from the prudence argument, given the analysis above.

Therefore, the Court grants Defendants' motion to dismiss on the divestiture issue.

### 3. Continuing to Hold and Offer Stock

As the Court noted above, Plaintiffs also contend that it was a breach of the duties of loyalty and prudence to continue holding and offering the Bank stock in the face of the known financial challenges the Bank was allegedly facing. While the Court concluded above that divestiture does not appear to have been an option under the allegations as pleaded, continuing to hold and purchase stock after the Class Period began may have been imprudent. *See In re Syncor ERISA Litigation*, 516 F.3d at 1095.

In *Syncor*, the court held that "there is a genuine issue whether the fiduciaries breached the prudent man standard by knowing of [matters affecting the health of the Company stock] while continuing to hold and purchase artificially inflated stock." *Id*. It is

ORDER - 13

true that, as Defendants point out, *Syncor* involved an illegal scheme, which is not a fact alleged in this matter. However, *Syncor* seems to stand for the proposition that, if the stock is artificially inflated, which Plaintiffs have alleged is the case here, then it may be imprudent to continue to offer and issue the stock. Although the issue of continuing to hold (i.e., failure to divest) stock is handled in the prior section, *Syncor's* holding bears on the issue of continuing to offer and purchase additional shares of the stock.

Essentially, it is Plaintiffs' position that the stock was artificially inflated because the participants did not have knowledge of the alleged financial crisis that the Bank was in, evidenced by the FDIC investigation. *See, e.g.,* Complaint ¶ 192. Further, because the fiduciaries are alleged to have known about this information, given their dual roles with the company, it is conceivable that Plaintiffs could establish some set of facts that would create liability for the breach of the fiduciaries' duties of loyalty and prudence. *See Syncor*, 516 F.3d at 1103. In other words, while the fiduciaries may have been stuck with the trust assets already being held, absent "special circumstances," with respect to divestiture, they did have the choice not to offer more of an allegedly "bad" thing, Bank stock. Indeed the plans offered the trustees the option to invest in assets other than stock. *See* Complaint ¶¶ 52 (citing KSOP § 5.1), 62 (citing ESOP § 14.1).

Therefore, on the issue of continuing to offer and purchase Bank stock, Defendants' motion to dismiss is denied.

**D.    Count II - Failure to Monitor**

Defendants allege that the plans' other fiduciaries failed to properly monitor the performance of their fiduciary appointees and exercise their removal and replacement authority for those whose performance was inadequate. *Id*. ¶¶ 13, 169. A claim for breach of the fiduciary duty to monitor is derivative of other claims. *See In re Computer Sciences Corp. Erisa Litigation*, 635 F. Supp. 2d 1128, 1144 (C.D. Cal. 2009) (emphasis added) .

Because this count is derivative, it survives to the extent Plaintiffs' other claims survive, as discussed herein. Therefore, the Court denies Plaintiffs' motion to dismiss on this issue.

### E.    Count III - Breach of Duty to Inform

ERISA requires that fiduciaries "discharge . . . duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). "ERISA imposes upon fiduciaries a general duty to disclose facts material to investment issues." *Cal Ironworkers Field Pension Trust v. Loomis Sayles & Co.*, 259 F.3d 1036, 1045 (9th Cir. 2001) (citing *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) (holding that "[a] fiduciary has an obligation to convey complete and accurate information to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information"); *accord, Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007) ("The duty of loyalty requires a fiduciary to disclose any material information that could adversely affect a participant's interests."). "In the investment context, a misrepresentation is 'material' if there was a substantial likelihood that it would have misled a reasonable participant in making an adequately informed decision about whether to place or maintain monies in a particular fund." *Edgar v. Avaya, Inc.*, 503 F.3d 340, 350 (3d Cir. 2007) (quoting *In re Unisys Sav. plan Litig.*, 74 F.3d 420, 440 (3d Cir. 1996) (internal quotations omitted)).

Plaintiffs allege that "Defendants breached their duty to inform the plans' Participants by failing to provide complete and accurate information regarding the soundness of [the Bank's] Stock and the prudence of investing and holding retirement contributions in the equity of the [Bank]." Complaint ¶¶ 13, 169. On this issue, Plaintiffs' allegations can be broken into two parts: (a) failure to fully inform and (b) misrepresentation of information disclosed.

### 1. Failure to Inform

To the extent Plaintiffs allege a failure to provide complete information, the Court is persuaded that Plaintiffs have adequately alleged a set of facts that, if proven, may create liability for the failure to disclose. *See, e.g.*, *id*. ¶ 213 (alleging a general failure to convey complete "information regarding the soundness of Company Stock and the prudence of investing and holding retirement contributions in the equity of the [Bank]"). In short, Plaintiffs allege a breach of the duty of disclosure in light of the alleged knowledge of the fiduciaries regarding the financial well-being of the Bank. The Court is persuaded that Plaintiffs may be able to establish some set of facts on which relief could be granted on this issue.

Therefore, the Court denies Plaintiffs' motion to dismiss on the issue of failing to disclose.

### 2. Misrepresentation

A misrepresentation claim under ERISA requires allegations of "(a) the status as an ERISA fiduciary acting as a fiduciary; (b) a misrepresentation on the part of the defendant; (c) the materiality of that misrepresentation; and (d) *detrimental reliance by the plaintiff on the misrepresentation*." *Computer Sciences*, 635 F. Supp. 2d at 1140 (citing *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001)). Defendants argue that Plaintiffs' misrepresentation claim fails as a matter of law because Plaintiffs have not pled sufficient facts regarding detrimental reliance. *See* Dkt. 36 at 10-11. Because Plaintiffs do not plead any facts that would establish detrimental reliance, their claim of failure to disclose to the extent it relies on a misrepresentation theory is foreclosed. *See generally* Complaint.

Therefore, the Court grants Defendants' motion to dismiss on the issue of misrepresentation as applicable to Plaintiffs' failure to disclose theory.

### F.  Count IV - Co-fiduciary Liability

In Count IV, the Plaintiffs allege that Fiduciary Defendants breached their duties and responsibilities as co-fiduciaries. *Id*. ¶¶ 13, 169. A claim for co-fiduciary liability under ERISA requires sufficient allegations of an underlying breach. In other words, this count presumes fiduciary liability in the first place, which makes it derivative in nature.

Because this count is derivative, it survives to the extent Plaintiffs' other claims survive, as discussed herein. Therefore, the Court denies Plaintiffs' motion to dismiss on this issue.

### G.  Judicial Notice

The Court may, pursuant to Fed R. Evid. 201, take judicial notice of and consider such documents of public record when ruling on a motion to dismiss. *See, e.g., Barron v. Rich*, 13 F.3d 1370, 1377 (9th Cir. 1994); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). In support of their opposition to the instant motion to dismiss, Plaintiffs request the Court to take judicial notice of the Material Loss Review of Venture Bank ("Loss Review") (Dkt. 37), and Defendants do not oppose the request. This Loss Review is a "public report of the FDIC's Office of Inspector General." Dkt. 37 at 3. Plaintiffs suggest that this document will support the Class Period for which they have identified to be the relevant period for their action against Defendants. *Id*.

The Court, therefore, takes judicial notice of this document and notes that, for purposes of the motion to dismiss, Plaintiffs have adequately alleged facts to support their identified Class Period.

**IV. ORDER**

Therefore, it is hereby

**ORDERED** that Plaintiffs' motion to dismiss (Dkt. 28) is **GRANTED in part** and **DENIED in part** as discussed herein.

DATED this 18th day of May, 2010.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge

ORDER - 18